906 A.2d 1140 (2005)
388 N.J. Super. 216
Judy SPRANKLE Plaintiff,
v.
ADAMAR OF NEW JERSEY, INC., d/b/a Tropicana Casino Resort; Aztar Corporation, d/b/a Tropicana Casino Resort et al, Defendant(s).
Superior Court of New Jersey, Law Division.
Decided January 5, 2005.
Jerry C. Goldhagen, Atlantic City, for plaintiff.
Thomas F. Bradley, Atlantic City, for defendant.
TODD, Sr., J.S.C.
This personal injury action involved discovery issues, which are a matter of first impression, involving the standard for *1141 additional discovery after a complaint dismissed pursuant to R. 4:23-5(a)(1) is later reinstated pursuant to R. 4:23-5(a)(2) after the discovery end-date. The court establishes an exceptional circumstances standard for the delinquent party and a good cause standard for the non-delinquent party.
Defendant Adamar of New Jersey, Inc. filed a motion to dismiss with prejudice on June 9, 2004, returnable on June 25, 2004. Plaintiff filed a cross motion to reinstate the complaint. The court carried the motion to July 2, 2004, because plaintiff indicated a cross motion to reinstate the complaint was forthcoming. That cross motion to reinstate was filed on June 28, 2004.
Defendant Adamar of New Jersey, Inc. then filed a cross motion on short notice to suppress the discovery to be served after the discovery end date of May 25, 2004.
The motions were all heard on July 2, 2004, and carried further until July 23, 2004, to allow analysis by counsel for the defendant as to whether plaintiff's answers to interrogatories were fully responsive as required by R. 4:23-5(a)(2). Defendant reported that the discovery was fully responsive and withdrew its motion to dismiss with prejudice.
This matter was before the court on a motion to dismiss without prejudice on January 9, 2004 pursuant to R. 4:23-5(a)(1). The plaintiff did not oppose that motion. The plaintiff took no action between January 9, 2004, and June 28, 2004, to reinstate the complaint. On that June date, plaintiff provided answers to interrogatories to the defendant. The discovery end date was May 25, 2004. Defendant asserts that plaintiff did not request an extension of discovery to allow for the late submission of interrogatories, and argues that Best Practices and current case law prohibit additional discovery after the discovery end-date. Defendant asserts it is prejudiced by the late answers because it cannot pursue discovery to obtain the deposition of the plaintiff, secure medical information and have the plaintiff submit to an independent medical examination.

Plaintiff in the Punxsutawney Tradition
Plaintiff's attorney in his personal certification, states, "The plaintiff lives and works all the way up in the Punxsutawney, Pennsylvania area ..." This is the area of Punxsutawney Phil, the famous groundhog that surfaces on Groundhog Day. In February of each year he comes out of his hole after a long winter's sleep to look for his shadow. If he sees it, he regards it as an omen of six more weeks of bad weather, and returns to his hole. If he does not see his shadow, he takes it as a sign of spring and stays above ground. It appears that the plaintiff didn't even surface for Groundhog Day. Plaintiff's attorney recites that he forwarded the interrogatories to the plaintiff for answer on June 12, 2003. He met with her on October 10, 2003, but she did not have the information needed to provide responses to the outstanding discovery. He met with her again on October 14, 2003. He wrote her on November 17, 2003. She then must have gone into her burrow for the winter, because the next reference to plaintiff's attorney contacting his client is setting up an appointment to meet her on June 16, 2004, which was delayed one day until June 17, 2004. The motion to dismiss with prejudice had been filed just days earlier, on June 9, 2004. At that meeting on June 17, 2004, plaintiff signed authorizations, gave substantial information and documents to prepare responses to interrogatories and responses to the notice to produce documents. Then, on June 25, 2004, plaintiff's attorney said he received the remainder of the information he needed, which allowed him to supply the interrogatories on June 28, 2004. This was three days after the *1142 return date of the scheduled motion to dismiss with prejudice and four days before the new adjourned date for the hearing.
While plaintiff's attorney has supplied his own certification, notably there is no certification from the plaintiff herself as to why she did not respond to discovery in a timely manner. In particular, there is no discussion of what happened between November 17, 2003 and June 17, 2004. This seven months of no activity remains unexplained.
R. 4:23-5(a)(2) provides that if an order of dismissal or suppression without prejudice has been entered and not thereafter vacated, the party entitled to the discovery may, after the expiration of ninety days, from the date of the order, move on notice for an order of dismissal with prejudice. Since plaintiff made no effort during the period following the dismissal without prejudice on January 9, 2004 to provide the fully responsive discovery, defendant moved to dismiss with prejudice on June 9, 2004. Plaintiff's attorney filed a cross motion to reinstate on June 28, 2004. R. 4:23-5(a)(1) provides, in pertinent part, that "the delinquent party may move on notice for vacation of the dismissal or suppression order at any time before the entry of an order of dismissal or suppression with prejudice." This last minute, gallows-saving maneuver is not new to plaintiff's attorney. He has now engaged in this practice for a number of years. This court has entered no fewer than seven last minute orders of reinstatement involving him and his clients during the past three years, and other civil judges have repeatedly experienced the same problem. The court has previously noted plaintiff's counsel's continued, systematic abuse of the Rules of Discovery in spite of previous sanctions for the same abuse. Financial sanctions have been imposed on occasion against plaintiff's counsel. Counsel fees and costs have been awarded to other counsel on occasion as well.
In any event, plaintiff's attorney is now in technical compliance with the Rules of Court in connection with providing the fully responsive discovery. As a result, defendant Adamar of New Jersey, Inc. has withdrawn its motion to dismiss with prejudice, and does not oppose the motion to reinstate the complaint. Therefore, the court grants the motion to reinstate the complaint.
What remains for the court's consideration is the defendant's cross motion to suppress plaintiff's answers to interrogatories and responses to other discovery supplied on June 28, 2004, because the discovery end date had expired on May 25, 2004.
Plaintiff's counsel is agreeable to an extension of discovery so that his client can have her deposition taken, so that she can also be examined by a doctor of the defendant's choice and will execute all necessary authorizations so that defendant obtain appropriate medical information to defend the case.

Discussion
It would be an anomaly in the law to allow a complaint to be reinstated because discovery has now been supplied and then to suppress that same discovery. To do so would possibly result in a dismissal of plaintiff's claim because of an inability to produce expert witnesses since they would have been mentioned in and reports provided by fully responsive discovery. See Tucci v. Tropicana, 364 N.J.Super., 48, 834 A.2d 448 (App.Div.2003) and Ponden v. Ponden, 374 N.J.Super. 1, 863 A.2d 366 (App.Div.2004), certif. denied 183 N.J. 212, 871 A.2d 90 (2005). Since the court will not impose the requested suppression, which could result in the ultimate sanction of dismissal with prejudice, it is appropriate to consider on what terms discovery *1143 should be permitted in this situation. It is appropriate to reopen discovery so that the defendant may follow up on the beyond the twelfth hour submission of discovery by plaintiff. See O'Donnell v. Ahmed, 363 N.J.Super. 44, 51, 830 A.2d 924 (Law Div. 2003). However, because discovery is opened so that the defendant will not be prejudiced by plaintiff's failure to reinstate the complaint during the discovery period, the question remains whether discovery should be opened for plaintiff and, if so, on what basis.
Issues of discovery deadlines are not new. For years the courts dealt with the late submission of discovery by providing for ex parte dismissal or suppression, with a $50 charge to reinstate. The issue of untimely discovery and the consequent delay in litigation have created a tension between instilling firmness and meaning to the provisions of our discovery rules on the one hand, but a general disinclination to invoke the ultimate sanction of dismissal. See Jansson v. Fairleigh Dickinson University, 198 N.J.Super. 190, 194, 486 A.2d 920 (App.Div.1985). Very often the debate has focused on whether the sins of the advocate should be visited on a blameless litigant. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 346, 476 A.2d 250 (1984); Crews v. Garmoney, 141 N.J.Super. 93, 96, 357 A.2d 300 (App.Div.1976).
Our old rules prior to Best Practices used to provide for ex parte dismissal with no advance notice to one's adversary. The delinquent party would then have thirty days from receipt of the order of dismissal to provide fully responsive answers to interrogatories and pay $50. However, these rules gave rise to numerous cases in which the harshness of the dismissal with prejudice became the issue. See the extended discussion in Aujero v. Cirelli, 110 N.J. 566, 542 A.2d 465 (1988). Following Aujero, the New Jersey Supreme Court Committee on Civil Practice reviewed the delinquent discovery and sanction problem, and came up with the present two-tier system. First a dismissal without prejudice to be followed on a subsequent motion by dismissal with prejudice. The monetary sanction was increased from $50 to $100 if the order was vacated within the first thirty days, and $300 thereafter. These sanctions were clarified to indicate they were a reinstatement fee and not a penalty, and would not be required to be paid if the reinstatement motion was denied. Amendments in 1998 provided for the provision of advising the defaulting litigant of the order of dismissal or suppression without prejudice having been entered and the consequences of it. At that same time it was clarified that the defaulting party could make a motion at any time to reinstate, even after the ninetieth day following dismissal without prejudice.
The Best Practices amendments in September 2000 expanded the applicability for noncompliance to include all discovery demands authorized by the rules (R. 4:18  Document Demands and R. 4:19  Request for Physical or Mental Examination).
Increasingly, our courts have refined the discovery process and provided guidance to the trial bar since the adoption in September 2000 of the Best Practices amendments. We know that motions to extend the time for discovery are to be granted for good cause, provided that they are filed within the time for discovery. Motions to extend the time for discovery filed outside the discovery period may be granted upon a showing of exceptional circumstances. Montiel v. Ingersoll, 347 N.J.Super. 246, 255, 789 A.2d 190 (Law Div.2001).
We know that any attempt to establish either good cause or exceptional circumstances justifying a request to extend the time for discovery should discuss the reasons why discovery has not been completed *1144 within the applicable discovery period and counsel's diligence in pursuing discovery during that time. Vitti v. Brown, 359 N.J.Super. 40, 49, 818 A.2d 384 (Law Div. 2003). In addition, there should be some showing that counsel has a legitimate and substantial need for the additional discovery requested.
Vitti set forth a four-prong test to make the substantial showing required to justify a request to extend the time for discovery once a matter has been scheduled for arbitration or trial. Plaintiff makes the case that no arbitration or trial had been scheduled in this case. The point made is meaningless here because the case had been dismissed, and no arbitration or trial date would be scheduled for a dismissed case.
The question remains whether a delinquent party whose complaint had been dismissed pursuant to R. 4:23-5(a)(1) and later reinstated pursuant to R. 4:23-5(a)(2) after the discovery end-date should be permitted to obtain additional discovery if such discovery could have been obtained but for the dismissal because of the plaintiff's delinquency in providing discovery. When a matter is dismissed without prejudice, does the discovery deadline clock continue to tick against the delinquent party? Put another way, is the discovery period of a delinquent party tolled pending reinstatement? This court thinks not. To hold otherwise would vitiate our discovery deadlines under Best Practices, and allow the delinquent party to control the discovery schedule and encourage dilatory practices by delinquent parties and their attorneys. However, that does not mean to say that a delinquent party could not justify a reopening of discovery if that delinquent party meets the exceptional circumstances standard. Those standards have been discussed as set forth in Vitti, supra, 359 N.J.Super. at 51, 818 A.2d 384. In addition, the methodology and standards to establish exceptional circumstances is not new. We know that merely advising the court in conclusory terms that the attorney and the client have hectic schedules does not qualify. O'Donnell, supra, 363 N.J.Super. at 51, 830 A.2d 924. Advising the court about how and why a schedule has prevented discovery would be a place to start. Ibid. Failure to provide such detail should always be fatal. Ibid.
Today we apply the exceptional circumstances standard to the reopening of discovery by and for a delinquent party where the complaint is reinstated following the discovery end date. Here, plaintiff has failed to provide any explanation as to why between November 17, 2003, and June 17, 2004, the discovery was not completed and a motion for reinstatement not made. The failure to do so over a period of seven months, without explanation from the plaintiff, is egregious. If reinstatement had been properly and promptly sought, there would have been ample time to engage in further discovery if desired. Plaintiff frittered away that opportunity by being dilatory in discovery.
The court avoids the problem of effective dismissal of plaintiff's claim by not suppressing the discovery provided to gain reinstatement. Plaintiff may rely on those answers to interrogatories and any documents produced on June 28, 2004.
The plaintiff has not provided proof of exceptional circumstances to justify further discovery as required by O'Donnell and Vitti. However, the standard to be applied to the non-delinquent party is good cause. The defendant must not be penalized by plaintiff's failure to provide discovery appropriately sought. Defendant has shown good cause to reopen discovery for it to obtain the deposition of the plaintiff and other witnesses it may choose to depose. In addition, the defendant is entitled to have an independent medical examination of the plaintiff and to obtain *1145 medical records in advance of the deposition and medical evaluation of plaintiff through an executed medical authorization and by subpoena, if necessary.
The motion to dismiss with prejudice was withdrawn.
The motion to reinstate the complaint is granted.
The motion to suppress the discovery provided to gain reinstatement is denied.
Discovery is opened for defendant for 90 days, but not opened for plaintiff. Plaintiff shall provide a signed authorization for medical records and earnings records within 10 days of receipt of a requested authorization. Plaintiff shall be deposed by defendant. Defendant may depose other witnesses as well. Plaintiff shall submit to any necessary medical evaluation(s).
The new discovery end date is April 5, 2005.
An appropriate form of Order has been executed.